United States District Court
Southern District of Texas
FILED

MAY 2 6 2016

. Clerk of Court

United States District Court
Southern District of Texas
**ENTERED**
May 27, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| MARIA E. GARCIA | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-15-322 |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| Defendant | § | |

## REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g). This case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b). Pending before the Court are the parties' motions for summary judgment, with briefs in support. (Dkt. Entry Nos. 6–9.) Plaintiff also filed a response to Defendant's motion for summary judgment. (Dkt. Entry No. 10.) This case is ripe for disposition on the record.

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 6) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 8) be **GRANTED** to the extent it is consistent with this Report, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

## I. BACKGROUND

Plaintiff filed for disability insurance and supplemental security income benefits in May 2012. (Dkt. Entry No. 7 at 1.) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) An administrative Law Judge ("ALJ") issued an unfavorable opinion

denying benefits on May 9, 2014, and the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–2.)

At the time of the proceeding, Plaintiff was 57 years old (a person of "advancing age" in Social Security language), had a limited education, had some ability to communicate in English, and had previously worked as a seamstress or sewing machine operator.   ( R. 26, 45; Dkt. Entry No. 7 at 2.)   Plaintiff's alleged impairments included:   diabetes mellitus, hypertension, hyperlipidemia, peripheral neuropathy, dry foot syndrome, dyshidrotic eczema (which causes itchy, sometimes, painful, small, fluid-filled blisters on the soles of the feet), obesity, and blurry vision.   (R. 24; Dkt. Entry No. 7 at 2.)   Symptoms of Plaintiff's alleged foot impairments included a burning sensation to the soles of her feet, thick calluses on her feet, and pain and discomfort.   (R. 25; Dkt. Entry No. 7 at 2.)

## II.   STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act.   *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985);   *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).   However, this Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence;   and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act.   *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id.* If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343). This Court's judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless. *Id.*

Although the reviewing court does not reweigh the evidence nor try the issues de novo, the court *does* analyze the evidence in determining whether substantial evidence exists, *e.g.*, *Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion), and, where relevant, in determining whether errors are harmful or prejudicial, *see, e.g., Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where an ALJ fails to fairly develop the record and facts, the claimant must show prejudice

to justify a remand, which requires a showing the ALJ could and would have adduced evidence that might have altered the result, had the ALJ developed the record fairly and fully).

## III.   ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act. 42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether the claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the first four steps to show that: (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work. *Leggett*, 67 F.3d at 564 n.2. Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236–37. The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry. *Leggett*, 67 F.3d at 564.

In this case, the ALJ made the following findings:   (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset (R. 24);   (2) Plaintiff has the following medically determinable impairments:   diabetes mellitus, hypertension, peripheral neuropathy, obesity, hyperlipidemia, dry foot syndrome, and blurry vision, while Plaintiff's alleged arthritis is not medically determinable; however, Plaintiff does not have an impairment or combination of impairments that significantly limit (or is expected to limit) the ability to perform basic work activities for 12 consecutive months (R. 24).   The ALJ thus ended the sequential analysis at Step 2 and found that Plaintiff was not disabled during the relevant period of time. (*See* R. 27.)

## IV.   APPLICABLE LAW & ANALYSIS

The undersigned does not summarize the entirety of the administrative proceedings and record.   Rather, the undersigned addresses the primary issues and evidence disputed by the parties.

Plaintiff argues that the ALJ erred by (1) applying the improper severity standard at Step 2; (2) failing to properly and fairly develop the record as it pertained to Plaintiff's alleged left hip pain, in light of the fact that the consultative examining physician ordered an x-ray of Plaintiff's left hip, but the right side of the hip was x-rayed instead by mistake; and, (3) the ALJ improperly rejected the RFC assessment by the non-examining, reviewing agency physician, Dr. Samaratunga, who opined that Plaintiff had a RFC for light exertional work, and, by doing so, the ALJ improperly substituted his own lay assessment of the medical evidence for that of a medical source opinion.   (Dkt. Entry No. 7 at 4–11.)

Defendant argues that the ALJ did not err because there is substantial evidence supporting the ALJ's adverse decision at Step 2, that the ALJ did in fact develop the record and had sufficient evidence upon which to make a ruling, that, either way, Plaintiff is unable to show prejudice

resulting from the ALJ's alleged failure to develop the record, and that the ALJ properly gave little weight to the RFC assessment by the agency physician because ample evidence contradicted the assessment and because it was conducted without the benefit of subsequent medical records that undermine the purported severity of Plaintiff's impairments and limitations.   (*See* Dkt. Entry No. 9.)

### The Proper "Severity" Standard at Step 2

At step two, the claimant bears the burden of demonstrating a severe impairment. *Leggett*, 67 F.3d at 564 n.2.  Pursuant to the Commissioner's regulations, an "impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  However, the Fifth Circuit held in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) ("*Stone*"), that the Commissioner must apply a more specific, refined severity standard at Step 2.  Under *Stone*, an impairment is "non-severe" if it amounts only to a "slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Id.*  This severity threshold involves a "de minimis" showing that the impairment (or impairments) are severe enough to interfere with the ability to do work. *Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992).  In *Stone*, the Fifth Circuit not only stated the standard for distinguishing between severe and non-severe impairments, but the court held that there is a presumption that the Commissioner does not apply the proper standard when the ALJ's opinion does not include the standard set forth in *Stone* by a direct or equivalent reference.   *Stone*, 752 F.2d at 1106.

A review of the ALJ's written decision shows that he thoroughly discussed the evidence, which he noted was limited and "scant" in nature, and the ALJ explained his reasoning in reaching his findings. (*See* R. 24–27.) In discussing the relevant law for Step 2, the ALJ set out the correct "severity" standard, expressly referencing *Stone v. Heckler* and its holding. (R. 23.) The undersigned finds no indication that the ALJ failed to *apply* the proper severity standard at Step 2. Although Plaintiff argues the ALJ failed to apply the proper standard, Plaintiff's argument is really about the ALJ's disposition of the evidence at Step 2. To Plaintiff, there is no way the ALJ could have evaluated the evidence and *not* concluded that at least *one* of Plaintiff's impairments, such as her obesity, is severe. However, there is no indication that the ALJ erred as alleged. Plaintiff's disagreement with the ALJ's disposition of the evidence at Step 2 does not persuade the undersigned the ALJ erred as alleged.

The undersigned concludes that the final decision is supported substantial evidence. At Step 2, and before discussing the evidence in support of his adverse findings, the ALJ considered Plaintiff's subjective complaints and symptoms under the relevant two-part inquiry. *See, e.g.,* 20 C.F.R. § 404.1529(c) (explaining how the adjudicator evaluates the intensity and persistence of symptoms, such as pain, and determines the extent to which the symptoms limit the capacity for work); *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (discussing the same two-step legal standard for evaluating subjective complaints of pain and other symptoms). The ALJ summarized Plaintiff's symptoms and limitations based on Plaintiff's testimony at the hearing. According to the decision, Plaintiff testified that: her feet and toes hurt; her feet burn (which she takes medication for); she must be off her feet and elevate them; she drops things and her hand feels heavy; she can only lift a gallon of milk and stand for 30 minutes; her pain level is 9 (out of

a possible 10) all the time;   she is unable to see out of her left eye;   and, she relies on her daughter to help her with household chores.   (R. 25.)

The ALJ found it "unreasonable" that Plaintiff's medically determinable impairments could produce the alleged symptoms, and, moreover, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision."   (R. 25–26.)   Later in the decision, the ALJ stated that "the claimant's subjective allegations are way out of proportion to the objective medical evidence," basing this conclusion on (a) the limited amount of medical records in general, (b) the fact that Plaintiff did not provide a medical source statement from a treating physician "indicating the claimant's impairments caused restrictions," (c) the relatively positive impact medications have had in controlling her impairments, (d) the fact that Plaintiff reported no complaints when she went to the doctor on October 13, 2012, (e) her denial of any visual disturbances at a medical appointment in June 2013, and (f) no evidence showing that her diabetes and hypertension have caused end-organ damage.   (R. 26.)   Lastly, the ALJ emphasized that Plaintiff's daily living activities are not as limited as one would expect, given the extreme severity of her alleged limitations and symptoms.   (R. 27.)   These activities included shopping, folding laundry, watching TV, making crafts, and spending time with others.   (*Id.*)

In addition to the ALJ's adverse symptomology and credibility finding, which was subsumed in the Step-2 determination, the ALJ's written decision reflects that his adverse decision at Step 2 was also based on the following evidence.   Plaintiff went to Nuestra Clinica Del Valle in March 2012, which was just prior to the alleged onset date.   (R. 26.)   At that time, she complained of neuropathy, but a foot examination was positive only for calluses and revealed no loss of sensation in her feet.   (*Id.*)   An examination around the same time indicated only obesity.

(*Id.*) In a June 2012 doctor's visit, Plaintiff had no complaints at all, and the physical examination indicated only obesity and dry feet. (*Id.*) At an appointment in September 2012, Plaintiff reported that the prescribed medication was helping her feet, and she reported she was "doing okay." (*Id.*) Her physical examination revealed only obesity and dry feet. (*Id.*) She was diagnosed with diabetes mellitus, hypertension, hyperlipidemia, and dyshidrosis of the feet. (*Id.*) At a follow-up visit in December 2012, Plaintiff stated that she had left hip pain and was diagnosed with left hip pain and prescribed pain medication.[1] (*Id.*) Nothing was indicated about neuropathy or any complications from her diabetes, high blood pressure, or hyperlipidemia. (*Id.*) On March 8, 2013, she was given an additional diagnosis of blurry vision due to her complaints of a floater/dark spot. (*Id.*) Plaintiff indicated that she had no pain at all, and a physical examination revealed only obesity and dry heels. (*Id.*) The ALJ noted that, in the last medical record in the case, from June 2013, Plaintiff once again stated she had no pain, and a podiatry examination revealed good sensation in her feet. (*Id.*)

---

[1] Plaintiff and Defendant note that, during this consultative examination, Plaintiff told Dr. Calvo that hip pain prevented her from lifting her left leg more than twenty degrees and that foot pain prevented her from walking on her heels or tandem walking. (R. 261.)

On August 10, 2012, Plaintiff underwent an internal medicine examination by a consultative physician, Dr. Calvo, in connection to her disability case. (*Id.*) Plaintiff did not complain of vision problems at the visit. (*Id.*) A physical examination showed that Plaintiff had discolored and greasy feet, as well as tenderness in her left hip. (*Id.*) Dr. Calvo noted Plaintiff's ability to reach, handle, finger, and feel was normal. (*Id.*) Dr. Calvo diagnosed her with left hip pain, obesity, history of pulsating sensation in the lower extremities, diabetes mellitus, hypertension, and poor foot hygiene (callus formation on heel). (*Id.*) Although Dr. Calvo ordered a left hip x-ray, the ALJ noted in the decision that Plaintiff's right hip was x-rayed instead of her left hip, but the ALJ nevertheless pointed out that the right hip x-ray was unremarkable, showing no significant abnormalities.[2] (*Id.*)

As Defendant correctly observes, Plaintiff had very few complaints to report to her treating physicians during her medical appointments in 2012, and her doctors were advising Plaintiff on how to manage her hypertension and cholesterol. (R. 276; 301; 302.) It was not until December 12, 2012, that Plaintiff reported to her treating doctor that she was having hip pain, and her physician prescribed medicine to manage the pain. (R. 299.) There was no follow-up medical care for this complaint, nor any subsequent complaints of hip pain (R. 288–91; 293– 96). During her consultative examination with Dr. Calvo, she stated that she had no problems regarding her diabetes and high blood pressure other than foot pain and tingling, and she could not list any limitations of movement regarding her obesity. (R 259.) At Plaintiff's medical appointments in 2013 for her diabetes, hypertension, and hyperlipidemia,  there were no remarkable examination

---

[2]   It appears that Dr. Calvo referred Plaintiff to Dr. Carlos E. Maldonado, D.O., to do the x-rays, which resulted in an x-ray of Plaintiff's right hip, instead of the left. (R. 262).

findings or complaints by Plaintiff.  In June 2013, her physician recommended that Plaintiff exercise 30 minutes each day.  (R. 289.)

The foregoing constitutes substantial evidence to support the final decision in this case. Despite Plaintiff's arguments to the contrary, the ALJ was under no obligation to credit Plaintiff's subjective complaints and alleged limitations at Step 2 when (1) there was lack of evidence (or weak evidence) supporting those limitations and (2) competing evidence that supported a contrary conclusion.  *See, e.g.*, *Brown*, 192 F.3d at 496 (explaining that evidentiary conflicts are for the Commissioner, not the courts, to decide);  *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (explaining that while the ALJ must consider subjective evidence of pain, it is within the ALJ's discretion to determine the disabling nature of the pain).  For example, although Plaintiff testified that she must remain off her feet and elevate them and experiences unremitting pain (a "9 out of 10" all the time), the medical evidence showed that her physician was advising her to exercise 30 minutes a day and that Plaintiff was not exhibiting or reporting these same symptoms to her physicians at her appointments, nor was there objective medical evidence, such as diagnostic testing or findings, to support the alleged symptoms and limitations.

Thus, without this type of support and corroboration, Plaintiff was left with—and continues to rely on—the diagnoses themselves.  Contrary to Plaintiff's argument, the ALJ was under no obligation, legally or factually, to conclude that Plaintiff's impairments are "severe" based on the mere fact that she has been diagnosed with obesity, hip pain, or foot pain or because Plaintiff believes common sense should dictate that a person with a body mass index as high as hers (46, according to Plaintiff's most recent number) would unquestionably experience some degree of functional impairment.  A diagnosis, standing alone, is generally not a substitute for showing that the condition actually causes some degree of limitation, *see Hames v. Heckler*, 707 F.2d 162, 165

11

(5th Cir. 1983) ("The mere presence of some impairment is not disabling per se."), nor does an increased BMI or a certain level of obesity compel the fact-finder to draw specific or dispositive inferences, such as at Step 2, *see* Social Security Ruling 02-1p, TITLES II AND XVI: EVALUATION OF OBESITY, 2002 WL 34686281, at *4 (explaining that "there is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment" at Step 2").

In this case, there was a dearth of medical records and opinion evidence from treating or examining physicians to support the alleged severe impairments and limitations, and there is a noticeable disparity between the severity of the limitations and symptoms Plaintiff alleged and testified about in support of her claim for benefits and her medical records—a disparity the ALJ expressly emphasized when he stated that "the claimant's subjective allegations are way out of proportion to the objective medical evidence."   No matter how lenient the showing at Step 2 may seem to Plaintiff, the ALJ did not err in reaching his final, adverse decision at Step 2, and there is substantial evidence to support it.   *Cf. Anthony*, 954 F.2d at 295 (concluding that one single report from an examining physician, which essentially showed nothing wrong with the claimant, constituted substantial evidence that the claimant did not suffer from a severe physical impairment).

### An ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ breached his duty to properly and fairly develop the record as it pertained to Plaintiff's alleged left hip pain, given that the consultative examination yielded an x-ray of the improper hip (the right hip area instead of the left).

An ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.   "If the ALJ does not satisfy his duty, his decision is

not substantially justified." *Id.*   Reversal is only appropriate if the plaintiff shows prejudice from the ALJ's failure to develop the record.   *Id.* "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."   *Id.* at 557 n.22.

At the same time, the claimant bears the burden of proving her disability.   *Wren v. Sullivan*, 925 F.2d at 128.   If she is unable to provide sufficient medical evidence, the ALJ may make a decision based on the evidence available.   *Id.*   But, when a "full and fair record" is lacking, the ALJ will not have sufficient facts on which to make an informed decision.   *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).

Plaintiff's logic seems to be that, if the ALJ orders a consultative examination, and the CE referral fails to produce, due to an error, the diagnostic testing the consultative physician elected to order based on his professional medical judgment, the ALJ fails to fairly and fully develop the record if the ALJ subsequently fails to correct the situation.   The undersigned concludes that the ALJ did not err and that, either way, Plaintiff fails to show prejudice.   Plaintiff makes much of the hip impairment and incorrect x-ray issue on judicial review, but a review of the record shows that this matter was not nearly as central or critical to Plaintiff's claim at the administrative level.   For example, Plaintiff's testimony about her physical limitations and symptoms focused on the condition her feet and pain in general, not on her hips or left hip.   As Defendant points out, there is one singular notation in the treatment record where Plaintiff complained of hip pain to her *treating* physician.   He prescribed pain medication, and there are no further complaints about her hip in the records from her treating physicians.   Plaintiff also raised the matter with the consultative examiner, Dr. Calvo.   He diagnosed Plaintiff with left hip pain, and, during the examination, Plaintiff told Dr. Calvo that hip pain prevented her from lifting her left leg more than twenty

degrees and that foot pain prevented her from walking on her heels or tandem walking.   (R. 261.)
As Defendant points out, the x-ray of the right hip area showed no abnormalities.   No other
physicians, including Plaintiff's treating physicians at the Nuestra Clinic, ordered any hip x-rays
after Dr. Calvo.   Although Plaintiff suggests the ALJ should have attached great significance to
the fact that Dr. Calvo ordered an x-ray of Plaintiff's hip and should have diligently pursued the
matter (*see* Dkt. Entry No. 10 at 2–3), the absence of any orders for hip x-rays by Plaintiff's
treating physicians, particularly in the year-long window of time following the appointment with
Dr. Calvo, carries just as much significance—as does the complete absence of complaints by
Plaintiff to her own treating physicians about her hip after December 2012, which the ALJ
expressly noted.   The ALJ also noted in the decision that Plaintiff did not tender a medical opinion
from her treating physician about the limitations caused by Plaintiff's impairments.

Contrary to Plaintiff's characterization of her own evidence, it does not amount to
"compelling evidence of debilitating left hip pain" that left the ALJ no other choice under the law
except to order a new consultative examination due to incorrect hip x-ray.   (Dkt. Entry No. 10 at
2.)   The undersigned concludes that, by the time the ALJ was poised to dispose of Plaintiff's
case, it was permissible for the ALJ to conclude that he had adequate evidence from which to
evaluate Plaintiff's claim for benefits, without the need to develop the record further on the issue of
Plaintiff's hip pain or in light of the botched x-ray.   *See, e.g., Wren*, 925 F.2d at128 (explaining
that the decision to order a consultative examination is within the discretion of the ALJ);   *Turner
v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (explaining that a consultative examination at
government expense is not necessary "unless the record establishes that such an examination is
necessary to enable the administrative law judge to make the disability decision").

Moreover, Plaintiff offers nothing on judicial review to demonstrate that she was prejudiced in order to justify a remand.  Plaintiff relies on her subjective allegations, which the ALJ did not credit, her self-reporting to Dr. Calvo, the consultative examiner, about her limited range of motion and hip-related symptoms, her self-reporting on one single occasion in 2012 when she complained about hip pain to her treating provider at the Nuestra Clinic, and the opinion of the non-examining agency physician, which the ALJ found to be inconsistent with the record evidence.  It is far too speculative at this juncture to believe that a new consultative examination—based largely in response to Plaintiff's *otherwise* uncorroborated subjective complaints and her self-reporting, which was spotty at best— would yield additional evidence about Plaintiff's hip that might lead to a different decision.  *See Ripley*, 67 F.3d at 557 n.22 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.").

### The Opinion of the Non-Examining, Reviewing Physician

For her final argument, Plaintiff contends that the ALJ improperly rejected the RFC assessment by the non-examining, reviewing agency physician, Dr. Samaratunga, who opined that Plaintiff had a RFC for light exertional work, and, by doing so, the ALJ improperly substituted his own lay assessment of the medical evidence for that of a medical source opinion.  (Dkt. Entry No. 7 at 4–11.)

The regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source.  20 C.F.R. § 404.1527(d).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis,

15

what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R.

§ 404.1527(a)(2).   Generally, more weight is given to an opinion of a treating physician than to

those given by other medical professionals, such as examining physicians and medical experts.

*Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).   The Fifth Circuit has consistently held that

"[o]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is

familiar with the claimant's injuries, treatments, and responses should be accorded considerable

weight in determining disability."   *Id.* (quoting *Greenspan*, 38 F.3d at 237).   At the same time,

an ALJ is free to reject the opinion of any physician when the evidence supports a contrary

conclusion. *Newton*, 209 F.3d at 455 (citation omitted).

In his written decision, the ALJ explained why he elected to give no weight to the State

agency physician opinion that Plaintiff is only to perform light exertional work.   (R. 27.)   The

ALJ wrote that the "overall benign medical evidence of record does not establish this level of

restriction is necessary at all for the claimant"—pointing out, for example, that the "claimant denied

having any complaints or pain at some of her doctor visits."   (R. 27.)

Plaintiff fails to explain persuasively how the ALJ's treatment of this evidence was

improper under the relevant legal standards.   The written decision shows that the ALJ considered

the opinion, which he was required to do.   *See* 20 C.F.R. § 404.1527(d) (explaining that the

require the Commissioner must evaluate every medical opinion it receives, regardless of its

source).   The ALJ explained the amount of weight he gave to it and why.   *See Loza v. Apfel*, 219

F.3d 378, 395 (5th Cir. 2000) (explaining that the ALJ cannot reject a medical opinion without an

explanation).   Moreover, nothing in the regulations required the ALJ to give this opinion more

weight than he did, and the ALJ was permitted to evaluate the reviewing physician opinion against

the record evidence as a whole, which he did, noting that the medical records showed that Plaintiff

hardly ever complained of pain or problems to her treating physicians. *Cf.* 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *Newton*, 209 F.3d at 455 (explaining that an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion). As Defendant correctly points out, the agency physician's assessment was completed in 2012, and these physicians did not have the benefit of the 2013 treatment records from Plaintiff's treating physicians. Moreover, the ALJ noted that Plaintiff had never tendered a medical opinion about her abilities and limitations from her own treating physicians.

In summary, the undersigned finds that the ALJ did not reversibly err as alleged by Plaintiff, and a remand is not warranted on any of the grounds argued. The undersigned also finds that the decision to deny benefits is supported by substantial evidence, as argued by Defendant and as supported by a review of the ALJ's decision and the record, and the decision to deny benefits should be affirmed.

## V.   CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 6) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 8) be **GRANTED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this

case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made.   The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 26th day of May, 2016.

Dorina Ramos
UNITED STATES MAGISTRATE JUDGE

18